UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,            :
                                               :
                              Plaintiff,        :        12 Civ. 1316 (KBF)
            -against-                           :        [rel. 11-cv-02598]
                                               :
MING ZHAO and LIPING ZHU,                       :        ECF
                                               :
                              Defendants.        :
-----------------------------------------------------------------------x


PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION PURSUANT TO FED. R. CIV. P. 4(f)(3) FOR LEAVE
TO SERVE DEFENDANTS ZHAO AND ZHU BY ALTERNATIVE MEANS

SECURITIES AND EXCHANGE
COMMISSION
      George N. Stepaniuk
      Sheldon L. Pollock
Brookfield Place, 200 Vesey Street
New York, New York 10281
(212) 336-0502 (Pollock)
Attorneys for Plaintiff

November 7, 2014

## TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................................... ii

Preliminary Statement ................................................................................................. 1

Background ................................................................................................................... 3

    The Commission's Case Against Zhao and Zhu ...................................................... 3

    The Commission's Efforts to Serve Defendants Through Hague Process .............. 5

    Zhao's Lawyers Contact the Commission to Engage in Settlement
    Discussions .............................................................................................................. 8

ARGUMENT ............................................................................................................... 9

I.    SERVICE BY ALTERNATIVE MEANS ON THE DEFENDANTS
    IS APPROPRIATE UNDER FED. R. CIV. P. 4(f)(3) .......................................... 9

II.    THE PROPOSED ALTERNATIVE SERVICE METHODS ARE NOT PROHIBITED
    BY INTERNATIONAL AGREEMENT AND COMPORT WITH
    DUE PROCESS ................................................................................................... 11

    A.    Service on Zhao Through Quinn Emmanuel Is Not Prohibited by International
        Agreement and Comports with Due Process ......................................... 12

    B.    Service of the Defendants by Publication Is Not Prohibited by International
        Agreement and Comports with  Due Process ........................................ 14

    C.    Service of the Defendants Through Puda's Fax Machine Is Not Prohibited by
        International Agreement and Comports with Due Process ................... 16

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

Page

<u>**Cases**</u>

<u>Agha v. Jacobs</u>, No. 07 Civ. 1800,
2008 WL 2051061 (N.D.Cal. May 13, 2008)...............................................................17

<u>Bidonthecity.com LLC v. Halverston Holdings Ltd.</u>, No. 12 Civ. 9258 (ALC),
2014 WL 1331046 (S.D.N.Y. March 31, 2014)......................................................10,13

<u>FTC v. PCCare247 Inc.</u>, No. 12 Civ. 7189 (PAE),
2013 WL 841037 (S.D.N.Y. March 8, 2013).................................................................13

<u>FTC v. Pecon Software Ltd.</u>, No. 12 Civ. 7186 (PAE),
2013 WL 4016272 (S.D.N.Y. Aug. 7, 2013)..................................................................13

<u>In GLG Life Tech Corp. Securities Litigation</u>, 287 F.R.D. 262 (S.D.N.Y. 2012) ..................10,13

<u>In re Puda Coal Securities Inc., et al. Litigation</u>, 11 Civ. 2598 (KBF) (S.D.N.Y.) ......................1,6

<u>In re South African Apartheid Litigation</u>, 643 F. Supp. 2d 423 (S.D.N.Y. 2009). .......................12

<u>In re International Telemedia Assoc., Inc.</u>, 245 B.R. 713 (Bankr. N.D. Ga. 2000) .................12,17

<u>Intercontinental Industries Corporation v. Luo et al.</u>, No. CV 10-4174-JST
2011 WL 221880 (C.D. Cal. Jan. 20, 2011)...................................................................14

<u>MacLean-Fogg Co. v. Ningbo Fastlink Equipment Co., Ltd.</u>, No. 08 CV 2593,
2008 WL 5100414 (N.D.Ill. Dec. 1, 2008)....................................................................16

<u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306 (1950).........................................12

<u>Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria</u>, 265 F.R.D. 106 (S.D.N.Y. 2010) ...10

<u>Philip Morris USA Inc. v. Veles Ltd.</u>, No. 06 CV 2988 (GBD),
2007 WL 725412 (S.D.N.Y.  March 12, 2007).............................................................17

<u>Prediction Co. v. Rajgarhia</u>, No. 09 Civ. 7459 (SAS),
2010 WL 1050307 (S.D.N.Y. March 22, 2010)............................................................13

<u>Prof'l Investigating & Consulting Agency Inc. v.  Suzuki</u>, No. 11-cv-01025,
2014 WL 48260 (S.D. Ohio Jan. 7, 2014).................................................................13,17

<u>Rio Props, Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007 (9th Cir. 2002).......................................11,13

RSM Prod. Corp. v. Fridman, No. 06 Civ. 11512 (DLC),
2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007)................................................................13

Salomon Bros. Inc. v. Huitong Int'l Trust & Inv. Corp., No. 94 Civ. 8559 (LAP),
1997 WL 324051 (S.D.N.Y. June 13, 1997) .................................................................13

SEC v. HGI, Inc., No. 99 Civ. 3866 (DLC),
1999 WL 1021087 (S.D.N.Y. Nov. 8, 1999)..............................................................15-16

SEC v. Tome, 833 F.2d 1086 (2d Cir. 1987)....................................................14,15,16

SEC v. Unifund SAL, 910 F.2d 1028 (2d Cir. 1990) ........................................................13

Smith v. Islamic Emirate of Afghanistan, Nos. 01 CIV 10132 (HB), 01 CIV 10144 (HB),
2001 WL 1658211 (S.D.N.Y. Dec. 26, 2001) .........................................................12,14

Studio A Entertainment, Inc. v. Active Distributors, Inc., No. 1:06CV2496,
2008 WL 162785 (N.D. Ohio Jan. 15, 2008) ...............................................................17

Zhang v. Baidu.com Inc., 293 F.R.D. 508 (S.D.N.Y. 2013) ...............................11,12,13

**Statutes and Rules**

Securities Act of 1933

      Section 17(a), 15 U.S.C. § 77q(a)....................................................................... 4

Securities Exchange Act of 1934

      Section 10(b), 15 U.S.C. § 78j(b) .....................................................................4,5

      Section 13(a), 15 U.S.C. § 78m(a) .....................................................................5

      Section 13(b)(2), 15 U.S.C. § 78m(b)(2)..............................................................5

      Section 13(b)(5), 15 U.S.C. § 78m(b)(5)..............................................................5

      Section 14(a), 15 U.S.C. § 78n(a).......................................................................5

      Section 20(a), 15 U.S.C. § 78t(a) .......................................................................5

      Section 20(e), 15 U.S.C. § 78t(e) .......................................................................5

      Rule 10b-5, 17 C.F.R. § 240.10b-5 ..................................................................4,5

Rule 12b-20, 17 C.F.R. § 240.12b-20 ...................................................................5

Rule 13a-1, 17 C.F.R. § 240.13a-1 .....................................................................5

Rule 13a-13, 17 C.F.R. § 240.13a-13 .................................................................5

Rule 13a-14, 17 C.F.R. § 240.13a-14 .................................................................5

Rule 13b2-1, 17 C.F.R. § 240.13b2-1 .................................................................5

Rule 13b2-2, 17 C.F.R. § 240.13b2-2 .................................................................5

Rule 14a-3, 17 C.F.R. § 240.14a-3 .....................................................................5

Rule 14a-9, 17 C.F.R. § 240.14a-9 .....................................................................5

Fed. R. Civ. P. 4(f)(1) ..................................................................................1,5,9

Fed. R. Civ. P. 4(f)(2) ........................................................................................9

Fed. R. Civ. P. 4(f)(3) .....................................................................................1,9

Fed. R. Civ. P. 55(a) ........................................................................................15

## Treaties and Conventions

Hague Convention on the Service Abroad of Judicial and ExtraJudicial Documents in Civil and
Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 .......................................................1

## Miscellaneous Authorities

Wright & Miller, 4B Federal Practice and Procedure: Civil § 1134 (3d ed.)...............................10

## Internet Sources

China – Central Authority & Practical Information .......................................................5

Hague Convention Status Table .........................................................................5,12

The New York Times Global Media Kit.....................................................................15

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 4(f)(3) for leave to serve Defendants Ming Zhao ("Zhao") and Liping Zhu ("Zhu") by alternative means.

## PRELIMINARY STATEMENT

Since the Commission filed this action against Zhao and Zhu, both residents of the People's Republic of China ("China" or "PRC") in February 2012, it has pursued its service obligations under Fed. R. Civ. P. 4(f)(1) through the process set forth in the Hague Convention on the Service Abroad of Judicial and ExtraJudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Convention").[1]  After making two separate attempts to serve the defendants through the Hague Convention protocols over the course of two-and-a-half years, the Commission has concluded that the Hague Convention process is not a viable mechanism to effect service and respectfully requests leave of the Court to serve the defendants through alternative means.

The Commission's first attempt at serving the defendants through the Hague Convention resulted in China's Ministry of Justice ("MoJ") returning the documents unserved.  With respect to Zhao, the MoJ indicated that he refused to take the documents when appraised of the intention of the process server.  With respect to Zhu, the MoJ informed the Commission that he no longer resided at the address listed on his state identification card that the Commission had obtained during the course of its investigation.  Given that the plaintiffs in a related private action pending before the Court (11-cv-02598), appeared to have been successful in serving defendant Zhao at the corporate office for Puda Coal, Inc. ("Puda") in China, the Commission sent a second set of

---

[1]    The Commission has provided the Court with regular reports on the progress of its service efforts in letters dated June 15, 2012, September 24, 2012, December 19, 2012, April 9, 2013, August 29, 2013, December 11, 2013, March 14, 2014, April 14, 2014, and September 19, 2014.

Hague Convention service packages to the MoJ with additional instructions in April 2013.  By September 2014, however, the documents had still not been served on the defendants and the Commission was told by an MoJ representative that the local court handling the service had been "out of town a lot recently" making it difficult for the MoJ to determine the status of the Commission's service request.  The Commission has not heard back from the MoJ since then.

While this process was unfolding, the Commission was approached by Zhao's attorneys at Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), and later, his attorneys at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), to discuss the possibility of settling the Commission's actions.[2]  The Commission asked Cleary Gottlieb and Quinn Emanuel to accept service of the summons and the complaint and they declined, advising that they were not authorized by Zhao to accept service.  Both sets of lawyers indicated that Zhao was aware of this action and the Commission's allegations.

Because the Commission's two efforts to serve the defendants through the Hague Convention process has proven futile, and because Zhao will not authorize his current counsel to accept service on his behalf, the Commission seeks the Court's leave to use alternative means to serve the defendants in this action.  The alternative methods the Commission proposes are not prohibited by international agreement and comport with due process.  First, the Commission requests leave to serve Zhao by e-mailing a copy of the summons and complaint, in both English and Mandarin, to Zhao's current counsel at Quinn Emanuel.  Second, the Commission respectfully requests leave to effect service by publication of notice of this action in the International New York Times, formerly the International Herald Tribune, which is an English-language newspaper of general circulation throughout the world.  Lastly, the Commission

---

[2]      One of the attorneys on Zhao's team at Cleary Gottlieb left the firm for Quinn Emanuel.  At some point in the last few months, the Commission understands that Zhao switched firms to Quinn Emanuel.

2

requests leave to serve the defendants by faxing a copy of the summons and complaint in both English and Mandarin to the fax machine number listed in Puda's securities filings.  As discussed in more detail below, alternative service in this case is necessary and each of these methods are an appropriate means of alternative service.

## BACKGROUND

**The Commission's Allegations Against Zhao and Zhu**

Puda was a U.S. corporation that traded on the NYSE Amex LLC Exchange from September 22, 2009 through August 17, 2011 (Complaint ¶ 12.).  The Commission filed this action on February 22, 2012, alleging that Zhao, the Chairman of Puda, and Zhu, Puda's former CEO, perpetrated a fraud on investors by effectively stealing and selling Puda's operating subsidiary, Shanxi Puda Coal Group Co., Ltd ("Shanxi Coal").  Prior to the defendants' alleged actions, Puda held an indirect 90% ownership stake in Shanxi Coal, a coal mining company located in the Shanxi Province of the PRC.  (Id. ¶¶ 14-15.)  In September 2009, just weeks before Puda announced that Shanxi Coal had received a highly lucrative mandate from the provincial government authorities to become a consolidator of smaller coal mining companies, the Commission contends that Zhao transferred Puda's 90% stake in Shanxi Coal to himself.  (Id. ¶¶ 16, 20-21.)

Thereafter, in July 2010, the Commission alleges that Zhao transferred a 49% equity interest in Shanxi Coal to CITIC Trust Co. Ltd. ("CITIC Trust"), a Chinese private equity fund controlled by CITIC Group, which is reported to be the largest state-owned investment firm in the PRC.  (Id. ¶¶ 2, 22.)  CITIC Trust placed its 49% stake in Shanxi Coal in a trust and then sold interests in the trust to Chinese investors.  (Id. ¶ 22.)  In addition, the Commission alleges that Zhao caused Shanxi Coal to pledge 51% of its assets to CITIC Trust as collateral for a loan of

RMB 3.5 billion ($516 million) from the trust to Shanxi Coal.  (Id. ¶¶ 23-24.)  In exchange,

CITIC Trust gave Zhao 1.212 billion preferred shares in the trust.  (Id. ¶ 22).  None of these asset

transfers were approved by Puda's board or its shareholders or disclosed in Puda's various

Commission filings, which Zhao and Zhu signed.  (Id. ¶¶ 19-20, 37-42.)  Puda also conducted

two public offerings in 2010 in the U.S. without disclosing that it no longer had any ownership

stake in the coal company, Puda's sole source of revenue.  (Id. ¶¶ 3, 17, 19.)  Thus, according to

the Commission's compliant, at the same time that CITIC Trust was effectively selling interests

in the coal company to Chinese investors, Zhao and Zhu were still telling U.S. investors that

Puda owned a 90% stake in that company.  (Id. ¶ 3.).

In addition, the Commission alleges that Zhao and Zhu continued to deceive Puda's

investors even after the Commission began its investigation.  (Id. ¶¶ 31-36.)  As set forth in the

Complaint, the Commission alleges that Zhu forged a letter purporting to be from CITIC Trust

which falsely stated that no funds had actually been loaned to Shanxi Coal and disclaimed any

interest in Puda's or Shanxi Coal's assets.  Zhao's counsel then provided the forged letter to the

Commission's investigative staff and to Puda's audit committee in an effort to create the false

impression that Puda and its public shareholders had not been harmed by the asset transfers.

After Puda disclosed the letter to the public in a Commission filing, further misleading

shareholders about the ownership of Puda's assets, the letter was exposed as a forgery.  Zhu

admitted forging the letter to the Commission and resigned as CEO.

On the basis of these allegations, the Commission's Complaint charges Zhao and Zhu

with violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") and Section

10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder. [3]

---

[3]      The Complaint asserts additional books and records violations against the defendants because they signed
various Commission filings and provided documents to their auditors that omitted disclosure of their fraudulent

(Complaint, Counts I and II.)  The Commission seeks permanent injunctions against both Zhao and Zhu against further violations of the federal securities laws, disgorgement of their respective ill-gotten gains plus prejudgment interest, officer and director bars, and civil monetary penalties.

**The Commission's Efforts to Serve Defendants Through the Hague Process**

Because Zhao and Zhu are Chinese nationals, the Commission proceeded to serve each of them pursuant to Fed. R. Civ. P. 4(f)(1) and the Hague Convention.  China is a signatory to the Hague Convention.  See Hague Convention Status Table, http://www.hcch.net/index_en.php ?act=conventions.status&cid=17 (last visited November 6, 2014).  Each signatory to the Hague Convention must designate a "Central Authority" to receive requests for service from other countries.  Hague Convention, art. 2.  The Central Authority designated for the PRC is the MoJ. See China – Central Authority & Practical Information, http://www.hcch.net/index_en.php?act= authorities.details&aid=243 (last visited November 6, 2014).  The Hague Convention website notes that China states that service of the completed documents will be made within "three to four months" of receiving the completed service package.  Id.

On March 26, 2012, the MoJ received the summons and complaint, along with translations of each document into Mandarin, for service on Zhao and Zhu.  For both Zhao and Zhu, the Commission provided the National Identification Card numbers for each defendant. (Declaration of Sheldon L. Pollock, executed Nov. 7, 2014 ("Pollock Decl.") ¶ 4.)  On March 27, 2012, the MoJ informed the Commission that it required an additional payment before it could

---

conduct.  In this regard, the Complaint charges Zhao and Zhu with violations of Sections 13(b)(5) and 14(a) of the Exchange Act, and Rules 13b2-1, 13b2-2,14a-3, and 14a-9 thereunder.  (Complaint, Counts III, IV, and V.) Similarly, the Commission charged Zhu with signing false certifications in Puda's annual and quarterly reports in contravention of Exchange Act Rule 13a-14 (Complaint, Count VI.)  In addition, the Complaint alleges that the defendants are liable as control persons for, and aided and abetted, Puda's violations of Exchange Act Sections 10(b), 13(a), 13(b)(2), and 14(a) and Rules 10b-5, 12b-20, 13a-1, 13a-13, 14a-3, and 14a-9 thereunder, making them liable under Sections 20(a) and 20(e) of the Exchange Act. (Complaint, Counts VII, VIII, IX, and X.)

process the request.  The additional payment was received by the MoJ on April 13, 2012.[4]  (Id. ¶ 5.)  In January 2013, the Commission received the service package back from the MoJ for Zhao. (Id. ¶ 6.)  The MoJ undertook to serve Zhao at his residence in the Shanxi Province of China. According to the MoJ, Zhao "refused to accept the documents."  (Id.)  In an affidavit that the Commission had translated, the Chinese process server stated:  "On the afternoon of August 29th, I . . . confirmed that Zhao Ming's residence address was Room 2405, Unit B of Meiyuan Tower.  At 17:27, I arrived at this apartment and knocked [on] the door.  A family member of Zhao Ming opened the door and I expressed my inten[t]ion.  Then this individual called Zhao Ming to notify him of the service of these documents but refused to take the documents after the call."  (Id.)

In February 2013, the Commission received the service package back from the MoJ for Zhu.  (Id. ¶ 7.)  The MoJ undertook to serve Zhu at his residence in the Guangdong Province of the PRC.  The Commission provided the MoJ with an address from Zhu's state identification card, a copy of which had been produced to the Commission during its investigation.  (Id. ¶ 4.) According to the MoJ, Zhu apparently no longer resides at that address.  (Id. ¶ 7.)

Thereafter, the Commission observed that in a related private action pending before the Court, the plaintiffs appeared to have been successful in serving Zhao at the principal executive office for Puda in China.  See In re Puda Coal Securities Inc., et al. Litigation, 11 Civ. 2598 (KBF), Summons Returned Executed, February 28, 2013, at 3 (Docket Entry No. 138).  Given the apparent success of plaintiffs in the private action, the Commission determined it prudent to undertake a second effort to serve both defendants using the Hague Convention protocols.

---

[4]     China requires a payment of $97 to effect service pursuant to the Hague Convention.  China's guidance on the Hague Convention website was unclear as to whether the $97 was required per case or per each defendant. Following notification from the MoJ that additional funds were required, the Commission promptly transmitted an additional $97 to cover payment for both defendants.  (Pollock Decl. ¶ 5.)

(Pollock Decl. ¶ 8.)  On April 12, 2013, the Commission sent new Hague Convention service

packages to the MoJ requesting that the MoJ serve both Zhao and Zhu at Puda's corporate

offices in China.[5]  (Id. ¶ 9.)  The Commission also requested that the MoJ again serve Zhao at his

residence with instructions to serve the documents even if Zhao again declines to accept the

papers.  (Id.)

Following its second attempt at service through the Hague Convention protocols, the

Commission followed up several times with the MoJ to ascertain the status of service.  In August

2013, the Commission received the following response from the MoJ:  "The case numbers for

Zhao are 2013-sxs-583 and 584.  The case number for Zhu is 2013-sxs-585."  The MoJ also

stated, "The cases are in the process of service by the court system.  Generally it takes 4 to 6

months to finish.  But it depends."  (Id. ¶ 10.)  In December 2013, the Commission again asked

for an update on the status of service and was told:  "Sorry, the cases are still in the process of

service. We are waiting for the result of service too."  (Id. ¶ 11.)  In late March 2014, the

Commission received another update from the MoJ in response to a request the Commission had

made in early March 2014.  The MoJ official stated, "All the cases are still in the process of

service.  We are waiting for the results coming back from the court too.  Once we have it, we

will let you know the first thing."  (Id. ¶ 12.)

On August 21, 2014, the Commission contacted the MoJ to ascertain the status of service

and received no response.  On September 8, 2014, the Commission again contacted the MoJ and

was told that the documents had not been served and that the MoJ would contact the Commission

once the MoJ had any information.  (Id. ¶ 13.)  The Commission thereafter thereafter asked the

---

[5]     Although Zhu has apparently resigned from the company, the Commission learned during the investigation
that he had apparently also resided at the company's headquarters.  As such, the Commission determined it
appropriate to attempt service on Zhu at the company's address.  (Pollock Decl. ¶ 9.)

MoJ official if it would be possible to contact the local court to find out the status of the papers since it had been over a year since the documents were provided to the MoJ. (Id.) The MoJ official responded by stating, "I will try to give the Supreme Court a call to ask about details. But they have been out of town a lot recently so I am not sure if I could reach anybody there. I will let you know once I obtain any information from them. Thank you." (Id.) The Commission has not heard back from the MoJ since then. (Id.)

Shortly thereafter, based on an assessment that Hague Convention service was no longer a viable mechanism to effect service, the Commission requested leave from the Court to file the instant motion.[6]

**Zhao's Lawyers Contact the Commission to Engage in Settlement Discussions**

In January 2013, around the time the Commission learned that Zhao had refused to accept a copy of the summons and complaint, the Commission was contacted by Zhao's attorneys at Cleary Gottlieb, who wished to engage in settlement discussions concerning the Commission's action against Zhao. (Id. ¶ 14.) Zhao's counsel at Cleary Gottlieb indicated that Zhao was aware of this action. (Id.) However, Zhao's counsel at Cleary Gottlieb informed the Commission that it was not authorized to accept service of the summons and complaint, and that it was appearing solely for the purposes of exploring the possibility of a settlement. (Id.) The Commission held

---

[6]  The Commission's experience in this case is not that unique. The Commission has been unsuccessful in the vast majority of its other cases involving service on Chinese defendants through the Hague Convention. As set forth in the Declaration of Kurt Gresenz, an attorney in the Commission's Office of International Affairs, the Commission has requested seventy separate acts of service upon parties in China and the MoJ has only reported successful service in sixteen instances. Declaration of Kurt Gresenz, dated November 5, 2014, at ¶ 4 (noting also that in thirty-six instances the MoJ's efforts were unsuccessful and in eighteen instances the Commission has not heard back from the MoJ at all).

one meeting with Zhao's counsel and last heard from his counsel at Cleary Gottlieb concerning this action in August 2013.[7] (Id.)

In October 2014, the Commission was contacted by attorneys at Quinn Emanuel, who stated that they now represented Zhao in connection with the Commission's action and that Zhao again wished to engage in settlement discussions concerning this action. (Id. ¶ 15.) The lawyers at Quinn Emanuel stated that they were retained to represent Zhao, for purposes of the Commission's action, approximately two to three months ago after transitioning the matter from Zhao's prior counsel, Cleary Gottlieb, where one of Zhao's current attorneys formerly practiced. (Id.) The Quinn Emanuel lawyers contacted the Commission to explore settlement of this action but again stated that they were not authorized to accept service on behalf of their client. (Id.)

## ARGUMENT

## I.   SERVICE BY ALTERNATIVE MEANS ON THE DEFENDANTS IS APPROPRIATE UNDER FED. R. CIV. P. 4(f)(3)

Service on a defendant in a foreign country is governed by Rule 4(f) of the Federal Rules of Civil Procedure. This rule establishes several methods for service on an individual outside of the United States including "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; . . . [and] (3) by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1), (3).[8] The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound

---

[7]      The Commission agreed to treat the content of the settlement discussions as confidential. (Pollock Decl. ¶ 14.)

[8]      Another method of service, contained in Fed.R.Civ.P. 4(f)(2), governs service in situations where "there is no internationally agreed means" of service or where "an international agreement allows but does not specify other means" of service. As China is a signatory of the Hague Convention, this provision of Rule 4(f)(2) does not apply.

discretion of the district court.  Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265

F.R.D. 106, 115 (S.D.N.Y. 2010) (internal citation and quotation marks omitted).

In this case, the Commission has attempted service on the defendants pursuant to Rule

4(f)(1) without success and seeks authority to serve the defendants through alternative means

pursuant to Rule 4(f)(3).  Rule 4(f)(3) was "adopted in order to provide flexibility and discretion

to the federal courts in dealing with questions of alternative methods of service of process in

foreign countries."  Bidonthecity.com LLC v. Halverston Holdings Ltd., No. 12 Civ. 9258

(ALC), 2014 WL 1331046, at *10 (S.D.N.Y. March 31, 2014) (quotations omitted).  Such

alternative service "should not be considered extraordinary relief." Wright & Miller, 4B Federal

Practice and Procedure: Civil § 1134 (3d ed.).

In cases involving service on an individual residing in a country that is a signatory to the

Hague Convention, district courts in this circuit "have often imposed a requirement that litigants

first attempt service by means of the Hague Convention before seeking court-ordered alternative

service under section 4(f)(3)."  In GLG Life Tech Corp. Securities Litigation, 287 F.R.D. 262,

266 (S.D.N.Y. 2012).  However, despite this general approach, "nothing in Rule 4(f) itself or

controlling case law suggests that a court must always require a litigant to first exhaust the

potential for service under the Hague Convention before granting an order permitting alternative

service under Rule 4(f)(3)."  Id. (noting that "that there will undoubtedly be many instances

where significant efforts to make service under the Hague Convention should be required by a

court before alternative service is ordered").

Here, the Commission has spent over two-and-a-half years attempting to serve the

defendants through the Hague Convention protocols in an effort to avoid burdening the court

unnecessarily.  Even after the initial Hague service packages were returned to the Commission

unserved, the Commission tried a second time to serve the defendants pursuant to the Hague

Convention based on the apparent success of the plaintiffs in the related private litigation

pending before the Court.  Since making its second attempt at service through the Hague

Convention—a process that China suggests should take three to four months—the Commission

has waited approximately a-year-and-a-half for service to be effected by the MoJ without

success.  Under these circumstances, service by alternative means on the defendants is

appropriate under Rule 4(f)(3).  See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015

(9th Cir. 2002) ("court-directed service under Rule 4(f)(3) is as favored as service under Rule

4(f)(1)").

## II.   THE PROPOSED ALTERNATIVE SERVICE METHODS ARE NOT PROHIBITED BY INTERNATIONAL AGREEMENT AND COMPORT WITH DUE PROCESS

The Commission proposes three alternative methods to serve Zhao and Zhu.  First, the

Commission requests leave to serve Zhao by sending via e-mail a copy of the summons and

complaint, in both English and Mandarin, to Zhao's current counsel at Quinn Emanuel.  Second,

the Commission requests leave to effect service by publication of notice of this action in the

International New York Times, formerly the International Herald Tribune, which is an English-

language newspaper of general circulation throughout the world.  Third, the Commission

requests leave to serve the defendants via fax using the fax machine number that Puda listed in

its securities filings.

A method of alternate service is acceptable if it "(1) is not prohibited by international

agreement; and (2) comports with constitutional notions of due process."  Zhang v. Baidu.com

Inc., 293 F.R.D. 508, 514 (S.D.N.Y. 2013) (internal citation and quotation marks omitted).  The

touchstone of alternative service is the same as for conventional service: whether the method is

"reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Smith v. Islamic Emirate of Afghanistan, Nos. 01 CIV 10132 (HB), 01 CIV 10144 (HB), 2001 WL 1658211, at *2 (S.D.N.Y. Dec. 26, 2001) (quoting In re International Telemedia Assoc., Inc., 245 B.R. 713 (Bankr. N.D. Ga. 2000)). Nonetheless, the Supreme Court has made clear that, "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317 (1950).

As discussed below, each of the Commission's proposed methods of service is not prohibited by international agreement and comports with due process. While the Commission has set forth multiple proposed methods of service, the Court "need only select one reliable mechanism." In re South African Apartheid Litigation, 643 F. Supp. 2d 423, 437 (S.D.N.Y. 2009). Moreover, "no one form of substitute service is favored over any other." Zhang, 293 F.R.D. at 515 (internal citation and quotation marks omitted). Finally, in selecting which method is appropriate, the Court is "afforded wide discretion." Id. (internal citation and quotation marks omitted).

A.   **Service on Zhao Through Quinn Emanuel Is Not Prohibited by International Agreement and Comports with Due Process**

Service of Zhao by e-mail on Quinn Emanuel is not prohibited by any international agreement. The Hague Convention is silent on e-mail service, and thus does not prohibit it.[9]

---

[9]   See Hague Convention Status Table, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited November 6, 2014). While China has objected to the means of alternative service set out in Article 10 of the Hague Convention (e.g., service via "postal channels"), it has not specifically objected to service by e-mail. "Where a signatory nation has objected to only those means of service listed in Article [10], a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10]."

Prof'l Investigating & Consulting Agency Inc. v. Suzuki, No. 11-cv-01025, 2014 WL 48260, at

*2 (S.D. Ohio Jan. 7, 2014) (concluding that e-mail service on PRC resident is not prohibited by

the Hague Convention and collecting cases); cf. FTC v. Pecon Software Ltd., No. 12 Civ. 7186

(PAE), 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) (holding that Hague Convention does

not prohibit e-mail service and granting Rule 4(f)(3) motion for e-mail service on Indian

nationals).

The Commission's proposed alternative service through Zhao's current attorneys, Quinn

Emanuel, also satisfies due process. Service on a foreign defendant's agent has long been

recognized by the Second Circuit as appropriate under Rule 4(f)(3). SEC v. Unifund SAL, 910

F.2d 1028, 1034 (2d Cir. 1990) (ruling that service on Lebanese defendants through their U.S.

broker-dealer was proper under Rule 4(i), Rule 4(f)(3)'s predecessor). And, in the case of

attorneys for defendants, courts have held that service on them satisfies due process where it

appears that the relationship is current, or that the defendant and the attorney are otherwise in

current contact. See Bidonthecity.com LLC, 2014 WL 1331046, at *10; Zhang, 293 F.R.D. at

515; Prediction Co. v. Rajgarhia, No. 09 Civ. 7459 (SAS), 2010 WL 1050307, at *2 (S.D.N.Y.

March 22, 2010); RSM Prod. Corp. v. Fridman, No. 06 Civ. 11512 (DLC), 2007 WL 2295907, at

*6 (S.D.N.Y. Aug. 10, 2007); Salomon Bros. Inc. v. Huitong Int'l Trust & Inv. Corp., No. 94

Civ. 8559 (LAP), 1997 WL 324051, at *3 (S.D.N.Y. June 13, 1997); accord Rio Props, 284 F.3d

1007, 1017 (9th Cir. 2002) (authorizing service on foreign defendant's United States counsel

where the attorney "had been specifically consulted by [the defendant] regarding this lawsuit").

---

FTC v. PCCare247 Inc., No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *3 (S.D.N.Y. March 8, 2013) (quotation
omitted). Further, e-mail service to Quinn Emanuel, a U.S.-based firm, would not even implicate the Hague
Convention, since there would be no documents "transmitted abroad." In re GLG Life Tech, 287 F.R.D. at 267
(citation omitted) (allowing service of process on corporate officer through U.S. based counsel for corporation and
ruling that email service on U.S. firm would not be service abroad).

In this case, Zhao retained Quinn Emanuel in connection with this action and had them contact the Commission's staff to see if it was possible to reach a resolution of the Commission's case against him. Quinn Emanuel currently represents Zhao regarding the Commission's lawsuit, is in current contact with him, and appears to have the ability to transmit the Commission's summons and complaint to him if so directed by the Court. Most importantly, it is clear that Zhao is well aware of the Commission's action and has authorized and instructed his attorneys to communicate with the Commission about the action. As such, service on Zhao through his attorneys at Quinn Emanuel is an appropriate means of alternative service under Rule 4(f)(3).

**B.**   **Service of the Defendants by Publication Is Not Prohibited by International Agreement and Comports with Due Process**

Service by publication in a newspaper of general circulation is not prohibited by any international agreement between the U.S. and China. Intercontinental Industries Corporation v. Luo et al., No. CV 10-4174-JST, 2011 WL 221880, at *2 (C.D. Cal. Jan. 20, 2011) ("Thus, the Hague Convention does not prohibit service by publication in China."). In addition, as an alternative means of service, publication in a newspaper of general circulation satisfies the requirements of due process. SEC v. Tome, 833 F.2d 1086, 1092 (2d Cir. 1987) ("As business dealings have become increasingly interstate and international, the means of giving notice have been extended to meet these situations, so that parties may be held accountable in our courts of justice."); see also Smith, 2001 WL 1658211, at *2-3.

The Commission proposes to publish a notice about the pendency of this action in the International New York Times.[10] According to its website, the International New York Times is

---

[10]   If the Court approves this motion, the Commission would publish a notice about the pendency of this action, in the form submitted as Exhibit J of the attached Pollock Declaration, in the International New York Times once a week for three weeks. It would identify this Court, the names of the parties, and summarize the

14

a leading international source for opinion leaders and decision-makers around the globe with a

daily readership of approximately 423,000 (approximately 200,000 in the Asia/Pacific region).[11]

Publication of a notice about this action in the International New York Times would be

reasonably calculated to give the Individual Defendants notice of this action.[12]

In Tome, an insider trading case, the Commission was unable to identify the individuals

who had made the illegal trades because of various foreign secrecy laws. Tome, 833 F. 2d at

1093. The Second Circuit found that the Commission had "reasonably concluded" that the

purchasers resided or conducted business in Europe and, therefore, the circuit held that the

district court had properly ordered publication of the Commission's case in the International

Herald Tribune as an appropriate means of service. Id. Tellingly, the Court went on to state that

"[t]he propriety of this method of notice must also be considered in light of the fact that members

of the securities industry . . . may be expected to be aware of a publicly announced SEC

investigation involving insider trading during a high visibility takeover." Id. (noting that the

facts were distinguishable from cases where notice was published in "a small regional paper" or

where the advertisement contained "nothing which would draw a party's attention to it"); see

also SEC v. HGI, Inc., No. 99 Civ. 3866 (DLC), 1999 WL 1021087, at *2 (S.D.N.Y. Nov. 8,

---

Commission's claims in this action and the relief requested. The notice would indicate that if any of the defendants failed to contact the Commission within the required time period, the Commission could seek the entry of default against them, pursuant to Federal Rule of Civil Procedure 55(a), for failure to answer, plead or otherwise defend against the Commission's Complaint. The Commission would also use best efforts to publish simultaneously the same notice in Mandarin. Officials of the International New York Times have indicated that while publication in Mandarin is possible, they cannot approve any such request in advance and will need to clear it with individuals in Paris once they receive the proposed advertisement. (Pollock Decl. ¶ 16.)

[11]   See The New York Times Global Media Kit, http://www.nytimesglobal.com/newspapers/international-new-york-times/audience-circulation.aspx (last visited November 6, 2014).

[12]   The Commission is not requesting leave to serve via a Chinese newspaper because the Commission has experience attempting to serve via newspapers in China without success. In one case, the Commission tried four different Chinese newspapers and none would publish the Commission's notice. The excuses ranged from one paper indicating that as a Communist Party paper it would be inappropriate to publish the Commission's notice, to another paper claiming libel concerns. (Gresenz Decl. ¶ 5.)

1999) ("Service by publication may be permissible when service is otherwise impossible and when it is reasonable to conclude that the defendant is likely to read the newspaper in which the notice is published, particularly when the defendant is otherwise on notice that there may be a case pending against him.") (citing Tome).

Here, both Zhao and Zhu served as the leaders of a U.S. publicly-traded corporation with Zhao serving as the Chairman of the Board and Zhu serving as its CEO. Both were aware of the Commission's investigation prior to the suit being filed and, Zhu, in fact, admitted to transmitting a forged letter to the Commission during the investigation prompting his resignation as CEO. In addition, Zhao, as noted above, is already aware of this action. Service via publication in the International New York Times is particularly effective way to serve the defendants in this case. The paper is read by approximately 200,000 people a day in the Asia/Pacific region and its target audience is "opinion leaders and decision-makers." Both Zhao and Zhu served as leaders of a U.S. publicly-traded corporation which makes service via publication in the International New York Times a reasonably calculated method, under all circumstances, to effect service on them in this action. Indeed, service via publication is particularly appropriate as to Zhu, who has not retained counsel in this action, and is no longer apparently living at the address on his state identification card. Zhu served as the CEO of a U.S. publicly-traded company and serving him via publication in a paper geared toward international decision-makers should satisfy any due process concerns.

C. **Service of the Defendants Through Puda's Fax Machine Is Not Prohibited by International Agreement and Comports with Due Process**

Service of the defendants by faxing a copy of the summons and complaint in English and Mandarin is not prohibited by any international agreement. MacLean-Fogg Co. v. Ningbo Fastlink Equipment Co., Ltd., No. 08 CV 2593, 2008 WL 5100414 (N.D.Ill. Dec. 1, 2008)

16

(permitting service on defendants in China through fax and noting that the "Hague Convention does not prohibit service by . . . facsimile"); see also In re International Telemedia, 245 B.R. at 721 ("[C]ommunication by facsimile transmission . . . ha[s] now become commonplace in our increasingly global society.  The federal courts are not required to turn a blind eye to society's embracement of such technological advances.").[13]

Here service on the defendants via Puda's corporate fax number also comports with due process.  Philip Morris USA Inc. v. Veles Ltd., No. 06 CV 2988 (GBD), 2007 WL 725412, at *3 (S.D.N.Y. March 12, 2007) (observing that "the alternative means of service by . . . fax in this case was reasonably calculated to apprise defendants of the pendency of this action" under Rule 4(f)(3)).  Zhao appears to have been served in a related private action at Puda's headquarters, which would validate using the headquarters' fax machine to serve Zhao.  In addition, while Zhu resigned from the corporation during the Commission's investigation, the staff understood that his last place of residence was Puda's corporate premises, which would make attempting to serve him through the company's fax machine a reasonable alternative method of service.  This is especially true given that it does not appear that he has moved back to the address on his state identification card.  Furthermore, service by fax provides an acceptable method of notice of the Commission's action; particularly here, where Puda held out its fax number in Commission filings as an appropriate means of contact.  Cf. Studio A Entertainment, Inc. v. Active Distributors, Inc., No. 1:06CV2496, 2008 WL 162785, at*4 (N.D. Ohio Jan. 15, 2008) ("[I]t is

---

[13]    The Commission notes that one magistrate judge, without explanation, has equated service by fax and e-mail to that of a "postal channel" under the Hague Convention and, as a result, denied a motion to serve German defendants through fax and e-mail based on Germany's objection to Article 10 of the Hague Convention.  Agha v. Jacobs, No. 07 Civ. 1800, 2008 WL 2051061, at *1–2 (N.D.Cal. May 13, 2008).  The Commission does not view this decision as correctly decided and believes the case to be an outlier.  See Suzuki, 2014 WL 48260, at *2 (collecting cases permitting e-mail service even where a country has objected to Article 10 of the Hague Convention).  Like e-mail, a fax machine does not rely on any "postal channel" to effect the transmission of the message and, as such, the Commission does not believe that equating faxes to "postal channels" is appropriate.

reasonable to conclude that if Defendants successfully receive orders for their allegedly copyright-infringing products by fax at the given number, they will also successfully receive service of the Complaint and Summons by the same method."). For these reasons, the Court should grant the Commission leave to serve the defendants by faxing a copy of the summons and complaint in English and Mandarin to the corporate fax number reported in Puda's filings with the Commission.

**CONCLUSION**

For all the foregoing reasons, the Commission respectfully requests the Court grant its Motion for an Order pursuant to Fed. R. Civ. P. 4(f)(3) authorizing the Commission to serve the defendants by the alternative means set forth above.

Dated: New York, New York
   November 7, 2014

SECURITIES AND EXCHANGE COMMISSION

By: _____
  George N. Stepaniuk
  Sheldon L. Pollock

Brookfield Place, 200 Vesey Street
New York, New York 10281-1022
(212) 336-0502 (Pollock)

Attorneys for Plaintiff