UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,  :
                                     :
             Plaintiff,              :    12 Civ. 1316 (KBF)
     -against-                       :    [rel. 11-cv-02598]
                                     :
MING ZHAO and LIPING ZHU,            :    ECF
                                     :
             Defendants.             :
----------------------------------------------------------------------x

## DECLARATION OF SHELDON L. POLLOCK

I, Sheldon L. Pollock, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am employed as a Senior Counsel in the Division of Enforcement of the Securities and Exchange Commission ("Commission"), the Plaintiff in this action. I submit this declaration in support of the Commission's motion for an order granting Plaintiff leave to serve Defendants Ming Zhao ("Zhao") and Liping Zhu ("Zhu") by alternative means pursuant to Fed. R. Civ. P. 4(f)(3). I am fully familiar with the facts and circumstances herein.

### The Commission's Service Attempts Pursuant to the Hague Convention

2. The Commission filed the instant action on February 22, 2012 against Defendants Zhao and Zhu, both citizens of the People's Republic of China ("PRC" or "China"), asserting that each had violated various provisions of the securities laws in connection with Zhao's role as Chairman, and Zhu's role as CEO, of Puda Coal, Inc., a U.S. public company headquartered in China.

3. Because Zhao and Zhu are Chinese nationals, the Commission proceeded to serve each of them pursuant to Fed. R. Civ. P. 4(f)(1) and the Hague Convention on the Service Abroad of Judicial and ExtraJudicial Documents in Civil and Commercial Matters, Nov. 15,

1965, 20 U.S.T. 361 (the "Hague Convention") to which China is a signatory. Each signatory to the Hague Convention must designate a "Central Authority" to receive requests for service from other countries. The Central Authority designated for the PRC is the Ministry of Justice ("MoJ").

4. On March 26, 2012, the MoJ received the summons and complaint, along with translations of each document into Mandarin, for service on Zhao and Zhu. For both Zhao and Zhu, the Commission provided the National Identification Card numbers for each defendant. A copy of the Commission's cover letters to the MoJ describing the Commission's submissions are appended hereto as Exhibit A.

5. On March 27, 2012, the MoJ informed the Commission that it required an additional payment before it could process the Commission's service request. China requires a payment of $97 to effect service pursuant to the Hague Convention. China's guidance on the Hague Convention website was unclear as to whether the $97 was required per case or per each defendant. Following notification from the MoJ that additional funds were required, the Commission promptly transmitted an additional $97 to cover payment for both defendants. The additional payment was received by the MoJ on April 13, 2012. A copy of the Commission's cover letter to the MoJ attaching the additional payment is appended hereto as Exhibit B.

6. In January 2013, the Commission received the service package back from the MoJ for Zhao. The MoJ undertook to serve Zhao at his residence in the Shanxi Province of China. According to the MoJ, Zhao "refused to accept the documents." In an affidavit that the Commission had translated, the Chinese process server stated: "On the afternoon of August 29th, I . . . confirmed that Zhao Ming's residence address was Room 2405, Unit B of Meiyuan Tower. At 17:27, I arrived at this apartment and knocked [on] the door. A family member of

Zhao Ming opened the door and I expressed my inten[t]ion. Then this individual called Zhao Ming to notify him of the service of these documents but refused to take the documents after the call." A copy of the communication that the Commission received from the MoJ, along with a certified translation, is appended hereto as Exhibit C.

7. In February 2013, the Commission received the service package back from the MoJ for Zhu. The MoJ undertook to serve Zhu at his residence in the Guangdong Province of China. According to the MoJ, Zhu apparently no longer resides at that address. A copy of the communication that the Commission received from the MoJ, along with a certified translation, is appended hereto as Exhibit D.[1]

8. Shortly after receiving back both service packages from the MoJ, the Commission observed that in a related private action pending before the Court, In re Puda Coal Securities Inc., et al. Litigation, 11 Civ. 2598 (KBF), the plaintiffs appeared to have been successful in serving Zhao at the principal executive office for Puda in China. Given the apparent success of plaintiffs in the private action, the Commission determined it prudent to undertake a second effort to serve both defendants using the Hague Convention protocols.

9. On April 12, 2013, the Commission sent new Hague Convention service packages to the MoJ requesting that the MoJ serve both Zhao and Zhu at Puda's corporate offices in China. Although Zhu had apparently resigned from the company, the Commission learned during the investigation that he had apparently also resided at the company's headquarters. As such, the Commission determined it appropriate to attempt service on Zhu at the company's address. The Commission also requested that the MoJ again serve Zhao at his residence with instructions to serve the documents even if Zhao again declines to accept the papers. A copy of

---

[1] The last page of the affidavit accompanying the returned service package for Zhu refers to a request that France had made to serve certain documents. The Commission's Office of International Affairs confirmed with the MoJ that this page was transmitted by the Chinese authorities to us in error.

3

the Commission's cover letters to the MoJ describing the Commission's submissions is appended hereto as Exhibit E.

10. In August 2013, the Commission followed up with the MoJ to ascertain the status of service. The Commission received the following response from the MoJ: "The case numbers for Zhao are 2013-sxs-583 and 584. The case number for Zhu is 2013-sxs-585." The MoJ also stated, "The cases are in the process of service by the court system. Generally it takes 4 to 6 months to finish. But it depends." A copy of these communications is appended hereto as Exhibit F.

11. In December 2013, the Commission again asked for an update on the status of service from the MoJ and was told: "Sorry, the cases are still in the process of service. We are waiting for the result of service too." A copy of this communication is appended hereto as Exhibit G.

12. In late March 2014, the Commission received another update from the MoJ in response to a request the Commission had made in early March 2014. The MoJ official stated, "All the cases are still in the process of service. We are waiting for the results coming back from the court too. Once we have it, we will let you know the first thing." A copy of this communication is appended hereto as Exhibit H.

13. On August 21, 2014, the Commission contacted the MoJ to ascertain the status of service and received no response. On September 8, 2014, the Commission again contacted the MoJ and was told that the documents had not been served and that the MoJ would contact the Commission once the MoJ had any information. The Commission thereafter asked the MoJ official if it would be possible to contact the local court to find out the status of the papers since it had been over a year since the documents were provided to the MoJ. The MoJ official

4

responded by stating, "I will try to give the Supreme Court a call to ask about details. But they have been out of town a lot recently so I am not sure if I could reach anybody there. I will let you know once I obtain any information from them. Thank you." A copy of these communications is appended hereto as Exhibit I. The Commission has not heard back from the MoJ since then.

### Zhao's Lawyers Contact the Commission to Engage in Settlement Discussions

14. In January 2013, around the time the Commission learned that Zhao had refused to accept a copy of the summons and complaint, the Commission was contacted by Zhao's attorneys at Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), who wished to engage in settlement discussions concerning the Commission's action against Zhao. Zhao's counsel at Cleary Gottlieb indicated that Zhao was aware of this action. However, Zhao's counsel at Cleary Gottlieb informed the Commission that it was not authorized to accept service of the summons and complaint, and that it was appearing solely for the purposes of exploring the possibility of a settlement. The Commission held one meeting with Zhao's counsel, the substance of which it agreed to keep confidential, and last heard from his counsel at Cleary Gottlieb concerning this action in August 2013.

15. In October 2014, the Commission was contacted by attorneys at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), who stated that they now represented Zhao in connection with the Commission's action and that Zhao again wished to engage in settlement discussions concerning this action. The lawyers at Quinn Emanuel stated that they were retained to represent Zhao, for purposes of the Commission's action, approximately two to three months ago after transitioning the matter from Zhao's prior counsel, Cleary Gottlieb, where one of Zhao's current attorneys formerly practiced. The Quinn Emanuel lawyers contacted the

Commission to explore settlement of this action but again stated that they were not authorized to accept service on behalf of their client.

### Service of the Defendants by Publication

16. In its motion, the Commission has proposed several alternative methods to serve the defendants. One of these proposed methods is service by publication of a notice of this action in the International New York Times, formerly the International Herald Tribune, which is an English-language newspaper of general circulation throughout the world. If the Court approves this method of alternative service, the Commission would publish a notice about the pendency of this action, in the form submitted as Exhibit J appended hereto, in the International New York Times once a week for three weeks. To the extent also ordered by the Court, the Commission would use best efforts to publish simultaneously the same notice in Mandarin. Officials of the International New York Times have indicated that while publication in Mandarin is possible, they cannot approve any such request in advance and will need to clear it with individuals in Paris once they receive the proposed advertisement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 7, 2014
New York, New York

Sheldon L. Pollock

6